[No. B208024. Second Dist., Div. Four. May 28, 2009.]

RIGOBERTO GUZMAN PELAYO, Plaintiff and Respondent, v.
J. J. LEE MANAGEMENT CO., INC., Defendant and Appellant.

COUNSEL

Law Offices of Steven L. Sugars and Steven L. Sugars for Defendant and Appellant.

Mancini & Associates, Marcus A. Mancini, Adam J. Reisner; Benedon & Serlin, Shona L. Armstrong and Douglas G. Benedon for Plaintiff and Respondent.

OPINION

**WILLHITE, J.—**

## INTRODUCTION

In this case, we deal with the "do's and don'ts" of Does. Code of Civil Procedure section 474 authorizes a plaintiff, who is ignorant of the true name of certain defendants, to name them as fictitious, or "Doe," defendants.[1] Upon discovering a Doe defendant's true identity, the plaintiff must amend the

---

[1] All undesignated statutory references are to the Code of Civil Procedure.

Section 474 provides in full: "When the plaintiff is ignorant of the name of a defendant, he must state that fact in the complaint, or the affidavit if the action is commenced by affidavit, and such defendant may be designated in any pleading or proceeding by any name, and when his true name is discovered, the pleading or proceeding must be amended accordingly; *provided, that no default or default judgment shall be entered against a defendant so designated, unless it appears that the copy of the summons or other process, or, if there be no summons or process, the copy of the first pleading or notice served upon such defendant bore on the face thereof a notice stating in substance: 'To the person served: You are hereby served in the within action (or proceedings) as (or on behalf of) the person sued under the fictitious name of (designating it).' The certificate or affidavit of service must state the fictitious name under which such defendant was served and the fact that notice of identity was given by endorsement upon the document served as required by this section. The foregoing requirements for entry of a default or default judgment shall be applicable only as to fictitious names designated pursuant to this section* and not in the event the plaintiff has sued the defendant by an erroneous name and shall not be applicable to entry of a default or default judgment based upon service, in the manner otherwise provided by law, of an amended pleading, process or notice designating defendant by his true name." (Italics added.)

complaint to allege the defendant's true name, "provided, that no default or default judgment shall be entered against a defendant so designated" unless two requirements are met. First, the summons must bear "on the face thereof a notice stating in substance" that the served person is being sued "under the fictitious name of" a specific, designated Doe defendant. Second, the proof of service filed with the court "must state the fictitious name under which such defendant was served and the fact that notice of identity was given by endorsement upon the document served as required by this section."

Here, plaintiff Rigoberto Guzman Pelayo amended his complaint to designate defendant J. J. Lee Management Co., Inc. (JJLM), as fictitious defendant "Doe 4." After JJLM failed to file a responsive pleading, plaintiff obtained clerk's entry of default against JJLM and a default judgment of $3.1 million. JJLM moved to vacate the default and default judgment, arguing that plaintiff had failed to comply with the requirements of section 474 regarding service of summons and proof of service. The trial court denied the motion. JJLM appeals, and we reverse.[2]

We conclude that substantial evidence supports the trial court's finding that the summons was properly endorsed—that is, that the summons "bore on the face thereof a notice stating in substance" that JJLM was being sued "under the fictitious name of" Doe 4. (§ 474.) The evidence is undisputed, however, that the proof of service of the summons did not contain the recitals required by section 474—that is, it did not "state the fictitious name under which such defendant was served" (Doe 4), and did not recite "the fact that notice of identity was given by endorsement upon the document [the summons] served as required by this section." Because section 474 makes compliance with the requirements for *both* the summons *and* proof of service mandatory to obtain a default or default judgment, the trial court erred in denying the motion to vacate.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Lawsuit*

In April 2004, after obtaining a right-to-sue letter from the Department of Fair Employment and Housing, plaintiff filed suit for disability discrimination (Gov. Code, § 12940) and wrongful discharge. He alleged that he had been employed for 13 years as a cook and gardener's assistant at the Chevy Chase Country Club (the Club). In May 2001, he suffered a knee and tendon injury

---

[2] JJLM filed two separate notices of appeal. The first, filed on May 20, 2008, is from the default judgment entered on February 25, 2008. The second, filed on August 29, 2008, is from the trial court's ruling denying the motion to vacate the default and default judgment. On September 30, 2008, we granted plaintiff's motion to consolidate the two appeals.

at work. His supervisors rejected his persistent requests for medical assistance and workplace accommodation. In May 2003, the Club fired him. Plaintiff named three defendants: the Club, Sicomoro Canyon, Inc., and Sicomoro Canyon, Inc., doing business as Chevy Chase Country Club. In addition, plaintiff named fictitious defendants "Does 1 through 100."

Through discovery, plaintiff learned that Sierra Investment, Inc., owned the county club business and property. Plaintiff therefore amended the complaint to add, as Does 1 through 3, Sierra Investment, Inc., and its owner, first sued as Don Han and later sued as Dong Kyu Han.

2. *Plaintiff Adds JJLM to the Lawsuit*

After additional discovery, plaintiff learned that appellant JJLM had purchased the Club from Sierra Investment, Inc., in August 2005. Accordingly, on March 24, 2006, plaintiff filed an amendment to the complaint adding JJLM as a defendant in place of Doe 4.

Shortly thereafter, plaintiff served JJLM, first by substituted service and thereafter by mail. The substituted service occurred on March 28.[3] A process server left the summons and complaint, the amendment to the complaint, and the notice of case assignment with Rosalyn Lee at the Club's premises. On March 31, copies of those three documents were mailed to JJLM at the Club's address. On April 6, plaintiff filed with the court proofs of service attesting to the service of the three documents.

On November 29, plaintiff served JJLM by substituted service and by mail with his notice of statement of damages and punitive damages (§§ 425.11, 425.115). In it, plaintiff reserved the right to seek $1 million in special damages, $1 million in general damages, $10 million in punitive damages and $1 million in attorney fees. The substituted service occurred at the Club's premises on November 29 and the service by mail was consummated the next day (Nov. 30). Plaintiff filed proofs of service with the court on December 11.

3. *The Default*

On March 28, 2007, plaintiff filed a request that the trial court enter a default against JJLM because JJLM had failed to answer the complaint or otherwise appear in the action. Plaintiff served JJLM by mail with a copy of this

---

[3] All dates in this part refer to 2006.

request. The next day (Mar. 29), the court clerk entered the default against JJLM. Nearly one year later, on February 25, 2008, the trial court entered a default judgment against JJLM for $3 million in damages, $100,000 in attorney fees, and $438 in costs. Plaintiff's request for default judgment was submitted to the court on plaintiff's "Default Prove-Up Brief," which included declarations, deposition testimony and documentary evidence. The evidentiary material addressed, among other issues, JJLM's August 2005 purchase of the Club from Sierra Investment, Inc., plaintiff's damages, and the attorney fees incurred.

### 4. The Claims Against the Other Defendants

By the time that plaintiff obtained his default judgment against JJLM, his claims against the other defendants were no longer extant. In October 2005, the trial court had granted plaintiff's motion for terminating sanctions against the three defendants originally named in the complaint based upon their willful failures to comply with court-ordered discovery. The court struck their answer and awarded plaintiff attorney fees.

Han, who had been added to the lawsuit in August 2005 under different names as Does 2 and 3, filed a bankruptcy petition in October 2005. In August 2007, Han entered into a settlement, approved by the bankruptcy court, with plaintiff. Han paid plaintiff $75,000 in return for plaintiff's release of his claims against him and others, including Sierra Investment, Inc. The settlement specifically provided that it was not a release of plaintiff's claims against JJLM, including those raised in the instant lawsuit.

### 5. JJLM's Motion to Vacate the Default and Default Judgment

On April 7, 2008, JJLM moved, pursuant to section 473, subdivision (d), to vacate the clerk's entry of default and the default judgment on the basis that both were void because of plaintiff's failure to comply with section 474.[4] JJLM relied upon the fact that the proof of service that plaintiff had filed with the court on April 6, 2006, recited: "The 'Notice to the Person Served' (on the summons) was completed as follows: [You are served] on behalf of: J.J. Lee Management Co., Inc. under CCP 416.10 (corporation)."[5] JJLM noted that to comply with section 474, the proof of service should have read "You are served on behalf of: J.J. Lee Management Co., Inc. as the person sued under the fictitious name of: DOE 4." (Original underscoring.)

---

[4] JJLM tendered a copy of its proposed answer to the complaint.

[5] Section 416.10 sets forth the proper methods to serve a corporation.

In addition, JJLM offered a series of declarations to establish that the summons it received on March 28, 2006, did not contain the required endorsement that JJLM had initially been sued as Doe 4. (JJLM never produced the actual summons and never offered an explanation for its nonproduction.) The declarations were from three members of the Lee family, the family which owned JJLM. The declarants were Rosalyn Lee who was served on March 28; her mother Ea Yung Lee, to whom Rosalyn Lee gave the documents; and her father Jong Jin Lee, JJLM's corporate secretary and one of its directors who reviewed the documents. Each stated that the summons did not indicate that JJLM had initially been sued as a fictitious defendant. Further, each averred, in contradiction of the process server's declaration, that he or she had not received an amendment to the complaint with the summons and complaint.[6]

6. *Plaintiff's Opposition to the Motion to Vacate the Default and Default Judgment*

Plaintiff's opposition to the motion to vacate sought to establish that JJLM had been served with a summons that properly indicated JJLM was originally sued as Doe 4. Plaintiff offered a declaration from Helen Darmanchyan, the employee of Personal Attorney Service who had prepared the summons and complaint served upon JJLM. Her declaration began: "All statements herein are of my own personal knowledge except where stated upon information and belief and of those things I believe them to be true." She stated that plaintiff's counsel sent her a form requesting service on JJLM as Doe 4. She attached a copy of that request to her declaration. Darmanchyan explained:

"I recall completing this particular summons to J.J. Lee Management Co., Inc., . . . to include: checking off box 2 and writing: 'Doe 4'; checking off box 3: and after 'on behalf of (specify):' writing 'J.J. Lee Management Co.,

---

[6] Although JJLM did not seek to set aside the default based upon excusable neglect, it offered the following explanation for its failure to answer the complaint. Jong Jin Lee averred, in relevant part: "The summons and complaint did not name J.J. Lee Management Co., Inc. as a defendant in this lawsuit. [¶] Since my family's company J.J. Lee Management Co., Inc. and my family were not named in the summons or complaint and we were not identified as a fictitiously named DOE defendant in the summons, I concluded the summons and complaint and this lawsuit had nothing to do with my family's company or my family. . . . [¶] After checking with the previous owner, the real estate people [involved in JJLM's purchase of the Club] told me that they agreed that the summons and complaint involved a lawsuit against a previous owner and that the lawsuit had nothing to do with [JJLM]." Along that line, JJLM noted that the addendum to its purchase agreement with Sierra Investment, Inc. recited, among other things: "Liabilities Transferred: Buyer is not purchasing any liabilities of the business or property."

Inc.'; and 'under' checking off box for CCP 416.10 corporation. It appeared as follows:

"NOTICE TO THE PERSON SERVED: You are served

"2. [X] as the person sued under the fictitious name of (specify): DOE 4

"3. [X] on behalf of (specify): J.J. Lee Management Co., Inc. under: [X] CCP 416.10 (corporation)."

Darmanchyan also explained that it "is [her] pattern and practice when filling out these summons for recently amended doe defendants to check mark box 2, and 3, writing in the Doe and corresponding number, and identifying the Doe's name" and that is how she prepared the summons for JJLM. Her declaration stated that only the *original* summons has these additions.[7] Consequently, the copy returned to her and plaintiff's counsel after service (and later filed with the court) does not include the notation that JJLM was served as Doe 4.

Darmanchyan addressed the failure of the proof of service to comply with the requirements of section 474 as follows: "I understood that a Doe defendant becomes a part of the complaint at the point that the amendment is filed because the true name is legally substituted for the Doe designation. Therefore, the POS [proof of service] was prepared to identify only J.J. Lee Management Co., Inc., and would not reflect that it had previously been designated [as] Doe 4." The declaration concluded: "I swear under penalty of perjury under the laws of the State of California that the forgoing is true and correct to the best of my knowledge."

## 7. *The Trial Court's Ruling*

Following a hearing, the trial court filed an order denying JJLM's motion. In it, the court acknowledged the evidentiary conflict created by the declarations as to whether the summons served in March 2006 complied with section 474, and implicitly resolved that conflict in favor of plaintiff. As for the failure of the proof of service to indicate that JJLM had been sued initially as Doe 4, the court apparently found that omission was not material. The court, in substance, construed plaintiff's evidence, which it credited, as "an amended affidavit of service" sufficient to meet the statutory requirement.

---

[7] She explained: "Personal Attorney Service does not typically maintain copies of my handwritten additions to these types of summons, nor do we provide our clients with a copy."

## DISCUSSION

JJLM contends that the trial court erred in denying its motion to vacate the default and default judgment, because neither the summons nor the proof of service complied with section 474.[8] Although we conclude that substantial evidence supports the court's finding that the summons complied with section 474, the evidence is undisputed that the proof of service did not. We therefore agree that the trial court erred in denying the motion to vacate.

### A. *JJLM's Evidentiary Objections*

We first discuss JJLM's evidentiary objections to the declaration of Helen Darmanchyan, who prepared the summons served on JJLM.

JJLM filed written evidentiary objections to Darmanchyan's declaration, in which she stated that she had prepared the summons in compliance with section 474. At the hearing on its motion to vacate, JJLM reiterated its objections and asked the trial court to rule upon them. The court took the matter under submission and later filed a detailed order denying the motion. Although the order does not address any of the evidentiary objections, the trial court implicitly overruled them because its ruling makes clear that it considered Darmanchyan's declaration. (See *Clopton v. Clopton* (1912) 162 Cal. 27, 32 [121 P. 720]; *Mike Davidov Co. v. Issod* (2000) 78 Cal.App.4th 597, 602–603 [92 Cal.Rptr.2d 897]; 3 Witkin, Cal. Evidence (4th ed. 2000) Presentation at Trial, § 387, p. 480.) We therefore address the merits of the implicit ruling denying the objections.

The dispositive portions of Darmanchyan's declarations are paragraphs 10 through 12, in which she explained her pattern and practice in completing a summons for a Doe defendant and her recollection as to how she completed the summons for JJLM. To these paragraphs, JJLM raised objections of "[i]rrelevant; lacks foundation for personal knowledge; inherently incredible." The trial court properly overruled all of these objections. Darmanchyan's averments were clearly relevant because they addressed a material disputed issue: what did that summons recite? Further, Darmanchyan possessed personal knowledge both of her pattern and practice in preparing a summons and of the preparation of this particular summons. Lastly, the credibility of her averments was a matter for the trial court to resolve.

---

[8] JJLM also challenges the default judgment itself. Because we conclude that the court erred in denying the motion to vacate, we need not discuss JJLM's contentions regarding the default judgment.

■ In addition, JJLM objected to the entirety of Darmanchyan's declaration on the basis that it failed to comply with the requirement of section 2015.5 that a declarant aver "under penalty of perjury that the foregoing is true and correct." Darmanchyan qualified that averment with the phrase "to the best of my knowledge." That phrase, however, does not "somehow magically nullif[y] whatever statement follows it. [Instead,] the phrase 'to the best of my knowledge' introduces an element of uncertainty which, *under certain circumstances*, can be lethal." (*Katelaris v. County of Orange* (2001) 92 Cal.App.4th 1211, 1215 [112 Cal.Rptr.2d 556], italics added (*Katelaris*), interpreting *Bowden v. Robinson* (1977) 67 Cal.App.3d 705, 719–720 [136 Cal.Rptr. 871] upon which JJLM relies; see also 2B Cal.Jur.3d (2007) Affidavits and Declarations, § 24, p. 127 ["[A] declaration that states that it is to the best of the affiant's knowledge or belief is not necessarily defective, if it in fact is made on personal knowledge"].) Here, the "trial court was able to evaluate the phrase 'to the best of my knowledge' as used in this context and decide whether it injected uncertainty into [Darmanchyan's] declaration. It [implicitly] found no such uncertainty, and we find no reason to quarrel with its judgment." (*Katelaris, supra*, 92 Cal.App.4th at p. 1216.)

The relevant portions of Darmanchyan's declaration described events about which she had personal knowledge: the manner in which she generally prepared a summons for a Doe defendant and how she prepared the summons in question. In this context, the phrase "to the best of my knowledge" at most raised an issue about the clarity and certitude of Darmanchyan's memory, matters going to the credibility and weight to be accorded her declaration, not its admissibility. In short, the trial court's implicit overruling of JJLM's objections was sound.

## B. *The Summons*

Section 474 provides, in relevant part, that "no default or default judgment shall be entered against" a fictitiously named defendant "unless it appears that the copy of the summons . . . served upon such defendant bore on the face thereof a notice stating in substance: 'To the person served: You are hereby served in the within action (or proceedings) as (or on behalf of) the person sued under the fictitious name of (designating it).' The certificate or affidavit of service must state the fictitious name under which such defendant was served and the fact that notice of identity was given by endorsement upon the document served as required by this section. The foregoing requirements for entry of a default or default judgment shall be applicable only as to fictitious names designated pursuant to this section . . . ."

In the present case Darmanchyan's declaration established that the summons, as required by section 474, "bore on the face thereof a notice stating in substance" that JJLM was being sued "under the fictitious name of" Doe 4. Although JJLM's declarations contradicted that claim, it was for the trial court to resolve this evidentiary conflict. Its decision will not be disturbed absent an abuse of discretion. (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 479 [243 Cal.Rptr. 902, 749 P.2d 339].)

To a certain extent, JJLM suggests that the trial court's decision was an abuse of discretion because plaintiff failed to offer a declaration from the individual who actually served the summons. We disagree. That Darmanchyan did not herself serve the summons was only one factor for the trial court to consider, one more than offset by JJLM's unexplained failure to produce the summons it had received, a failure the trial court noted in its order denying JJLM's motion. (See Evid. Code, § 412 ["If weaker and less satisfactory evidence is offered when it was within the power of the party to produce stronger and more satisfactory evidence, the evidence offered should be viewed with distrust."].) Further, the trial court could have reasonably regarded the nine declarations from the three Lee family members with skepticism. In the course of litigating the motion to vacate and responding to plaintiff's pleadings which noted the evidentiary gaps in JJLM's claim, each family member produced additional declarations, one after another, to try to cure factual omissions in their claim that the summons had not been properly endorsed. Although the Lee family declarations asserted that the summons was not properly endorsed, the presentation of such evidence is insufficient to show that the trial court abused its discretion in resolving the issue against JJLM. (*Shamblin v. Brattain, supra*, 44 Cal.3d at p. 479.)

## C. *The Proof of Service*

Our conclusion that substantial evidence supports the trial court's finding that the summons served on JJLM properly stated JJLM was fictitiously sued as Doe 4 does not end the matter. Besides requiring the particular endorsement on the summons, section 474 also requires that the proof of service filed with the court "must state the fictitious name under which such defendant was served [here, Doe 4] and the fact that notice of identity was given by endorsement upon the document served [here, the summons] as required by this section." The evidence is undisputed that the proof of service did *not* meet these requirements. Although plaintiff attempted to explain that failure through Darmanchyan's declaration (Darmanchyan did not believe it was necessary), the fact remains plaintiff did not comply with the statute.

■ Although no case has so held, a leading treatise and two practice guides have concluded that a plaintiff must comply with the statutory requirements for *both* the endorsement of the summons *and* for the recitals in the proof of service before a default or default judgment can be entered.[9] (6 Witkin, Cal. Procedure (5th ed. 2008) Proceedings Without Trial, § 177, p. 619; Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2008) ¶ 4:134, p. 4-20.1 & ¶¶ 5:223 to 5:225, p. 5-52; Civil Procedure Before Trial (Cont.Ed.Bar 4th ed. 2008) §§ 17.10, 17.61, pp. 789, 817–818.) We agree with their conclusion.

■ First, the plain language of section 474 dictates that result. The relevant language begins with the declaration "that no default or default judgment shall be entered against a defendant so designated [as a fictitious defendant], unless it appears that the copy of the summons . . . bore on the face thereof a notice stating in substance: 'To the person served: You are hereby served in the within action (or proceedings) as (or on behalf of) the person sued under the fictitious name of (designating it).' " The next sentence provides: "The certificate or affidavit of service *must state* the fictitious name under which such defendant was served and the fact that notice of identity was given by endorsement upon the document served as required by this section." (Italics added.) After thus prescribing the contents of the summons and proof of service, section 474 provides in the immediately following sentence: "The foregoing *requirements* for entry of a default or default judgment shall be applicable" to fictitiously named defendants. (Italics added.) The Legislature's use of the plural, "requirements," equates the statutory mandate for the proof of service to that for the summons, and thus makes clear that compliance with *both* mandates is necessary for a default or default judgment to be entered. (See, e.g., *Mahdavi v. Fair Employment Practice Com.* (1977) 67 Cal.App.3d 326, 334 [136 Cal.Rptr. 421] [Every word in a statute "is presumed to have been intended to have a meaning and perform a useful function."].)

■ Second, case law interprets the language of section 474 to be mandatory, not directory. In *Armstrong v. Superior Court* (1956) 144 Cal.App.2d 420 [301 P.2d 51] (*Armstrong*), a defendant initially sued as a Doe defendant was served with summons and complaint. However, the summons did not bear the endorsement required by section 474 that he had been served as one of the fictitious defendants. (*Armstrong*, at pp. 422, 424.) The appellate court held this omission was fatal. It noted that when the Legislature amended the statute in 1953, it included the language that "no

---

[9] We granted JJLM's motion to take judicial notice of the legislative history of section 474. Nothing in the proffered documents sheds any light on the matter.

default or default judgment shall be entered against a defendant" unless the statutory requirement was met. The court therefore concluded that section 474 "is not directory but mandatory, and its effect is to deprive the court of the right to proceed against a defendant served with such a defective summons." (*Armstrong*, at p. 424; see also *Fuss v. City of Los Angeles* (1958) 162 Cal.App.2d 643, 646 [328 P.2d 831].)

Although *Armstrong* dealt with a plaintiff's failure to comply with the requirement of proper endorsement of the summons, its reasoning applies as well to a failure to comply with the requirements regarding the recitals to be included in the proof of service. Section 474 provides that the proof of service "must" contain the two recitals. Use of the word "must" establishes that the requirement is mandatory. (*Rosenfield v. Superior Court* (1983) 143 Cal.App.3d 198, 202 [191 Cal.Rptr. 611]; *California Teachers Assn. v. Governing Board* (1977) 70 Cal.App.3d 833, 842 [139 Cal.Rptr. 155].)

■ Third, in the context of defaults and default judgments, the recitals required for the proof of service are not mere formalities devoid of purpose. As we have discussed, section 474 contains requirements for both the summons and the proof of service. If, after being served, the defendant fails to file a responsive pleading to the complaint, the court clerk, on request, has a ministerial duty to enter a default. (See, e.g., *Goddard v. Pollock* (1974) 37 Cal.App.3d 137, 143 [112 Cal.Rptr. 215].) To discharge that limited duty, the clerk must review the court file to determine, among other things, that proof of service has been filed. (§ 585, subd. (a).) The requirement of section 474 that the summons inform the served person that he or she is being served as a particular Doe satisfies due process by informing the person that his or her liability, if any, is defined by the allegations of the complaint relating to that Doe defendant. But absent a proof of service containing the recitals required by section 474, the clerk has no way to ascertain whether the summons contained such notice. Nor, generally, would the trial court hearing a later default prove up. Thus, section 474 quite reasonably makes the required recitals for the proof of service a necessary prerequisite to entering a default and default judgment.

■ Finally, this result is consistent with the general principle that because a default judgment ends a case, "the rules leading to it are precise and should be followed to the letter. Where a plaintiff fails to adhere to those rules, a defendant need not suffer the consequences a default judgment brings." (*Jones v. Interstate Recovery Service* (1984) 160 Cal.App.3d 925, 928 [206 Cal.Rptr. 924].)

■ In sum, the clerk's power to enter a default is conferred by section 585. But for a person initially sued as a fictitious defendant, the power is further limited by section 474: there must be a proper proof of service on file with the court before a default can be entered. Section 474 also makes that document a necessary prerequisite to entering a default judgment. Here, that document was lacking. Therefore, the clerk's entry of default, and the judgment based upon it, violated section 474, and must be set aside.

Plaintiff argues against this result by urging that he filed an amended proof of service that met the statutory requirement. Although the trial court agreed, we do not. Plaintiff never actually filed an amended proof of service. That is, he never tendered another declaration from the individual who had served the summons and complaint and completed the proof of service. Instead, plaintiff offered Darmanchyan's declaration to establish that the summons was properly endorsed to indicate that JJLM had been served as Doe 4. The trial court credited that evidence and then apparently construed it to be the equivalent of an amended proof of service. However, plaintiff offers no authority that such a procedure is proper when the issue is failure to meet section 474's mandatory requirements.[10] Instead, he cites inapposite decisional law addressing other issues regarding service.

For instance, plaintiff relies upon *Alpha Stores, Ltd. v. You Bet Min. Co.* (1936) 18 Cal.App.2d 249 [63 P.2d 1137] (*Alpha Stores*). *Alpha Stores* did not involve any consideration of section 474's specific requirements. Instead, the issue was whether a corporation had been properly served when the proof of service failed to indicate the corporate status of the individual served with the summons and complaint. The case was based upon a lawsuit filed against a corporate defendant named in the complaint, You Bet Mining Co. The sheriff served the summons and complaint on McGhie, the corporation's general manager. The proof of service recited service " 'on You Bet Mining Co., a corporation, Mr. [McGhie] being the defendant named in said summons.' " (18 Cal.App.2d at p. 250.) The plaintiff ultimately obtained a default judgment. The corporation moved to set aside the judgment, urging it was void because service "fail[ed] to show legal service thereof on the defendant corporation." (*Ibid.*) In opposition to the defense motion, the plaintiff presented evidence that McGhie—the individual indisputably served—was the corporation's general manager. Based upon that showing, the trial court permitted the plaintiff to file "an amended return of service of summons, showing that the person upon whom the summons was served on August 15,

---

[10] Because plaintiff did not offer an actual amended proof of service, we express no opinion about whether such procedure would be proper.

1935, was E. A. McGhie and that he was then general manager of the defendant corporation" (*id.* at p. 251) and denied the motion to vacate.

On appeal, the reviewing court affirmed the trial court's ruling. In a passage quoted by our plaintiff (as well as the trial court in denying JJLM's motion), the appellate court explained: "The law is well settled that a defective return of service of process does not render the judgment void, provided the service was actually made as required by the statute upon the proper person or representative of a corporation. It is the actual service of process, rather than the mere proof thereof which confers jurisdiction on the court, and an amended affidavit of service may be filed to support the validity of a judgment which is rendered by default." (*Alpha Stores, supra,* 18 Cal.App.2d at p. 251.) This holding does not assist plaintiff. " 'Language used in any opinion is of course understood in the light of the facts and the issue then before the court, and an opinion is not authority for a proposition not therein considered.' [Citation.]" (*Deauville Restaurant, Inc. v. Superior Court* (2001) 90 Cal.App.4th 843, 851 [108 Cal.Rptr.2d 863] (*Deauville*).) *Alpha Stores* did not address section 474's specific and mandatory requirements for Doe defendants and, in fact, could not because they were not enacted until 17 years later. Consequently, the holding of *Alpha Stores* that it was proper to file an amended affidavit of service to cure a failure to designate that the individual served was an agent of the corporate defendant does not support plaintiff's argument that his evidentiary showing cured his conceded failure to comply with section 474. Under section 474, no default or default judgment can be entered unless the proof of service states the fictitious name of the defendant and that the required notice of the fictitious designation was provided on the summons. Here, plaintiff did not provide such a proof of service.

We likewise reject plaintiff's reliance upon cases addressing variations upon a plaintiff's failure to comply with the statutory requirement to return a proof of service. In denying JJLM's motion to vacate, the trial court relied heavily upon *Courtney v. Abex Corp.* (1986) 176 Cal.App.3d 343, 346–347 [221 Cal.Rptr. 770] (*Courtney*). *Courtney* raised the question whether the plaintiffs had complied with the requirement of filing a return of summons with the court within three years of commencement of the action. (Former § 581a, now § 583.210.) There, after the plaintiffs served several defendants, they filed *copies* of the summons with the court within the required three-year period. After the three-year period expired, the defense moved to dismiss based upon the plaintiffs' failure to return the *original* summons to the court. The plaintiffs responded by moving to file the original summons nunc pro tunc to correct their earlier failure. The trial court denied the plaintiff's motion and granted the defense motion to dismiss.

The appellate court reversed. It noted that the statute did not require return of the original summons as opposed to a copy of the summons. (*Courtney, supra*, 176 Cal.App.3d at p. 347.) Further, in language relied upon by the trial court in the present case, it wrote: "The purpose of requiring a return to the court of the summons and proof of service is to give the court notice that plaintiff is diligently prosecuting his case and that defendant has been informed of the action against him and knows he must appear in court. [Citations.] If service upon the defendant is properly made, it is of little importance that there is a defect in the return since ' "[i]t is the *fact of service* which gives the court jurisdiction, not the proof of service." ' " (*Id.* at p. 346, original italics, fn. omitted.) We agree with this holding as applied to its facts, but it has no application to this appeal. *Courtney* did not involve section 474, and is not authority for the proposition that that fact of proper service on a Doe defendant dispenses with the twin requirement of section 474 regarding the proof of service. As section 474 makes clear, the requirements for *both* the summons *and* proof of service must be met for a default and default judgment to be entered. (See *Deauville, supra*, 90 Cal.App.4th at p. 851.)

Plaintiff also relies upon *National Diversified Services, Inc. v. Bernstein* (1985) 168 Cal.App.3d 410 [214 Cal.Rptr. 113]. There, the plaintiff personally served a defendant with summons and complaint and filed a return of service with the trial court. Both the service and return occurred more than three years after the complaint had been filed. The defendant failed to appear and the plaintiff obtained a default judgment. The defendant moved to vacate, urging the default judgment was void because he had been served beyond the three-year period. (Former § 581a.) The appellate court rejected that contention, finding that both decisional and statutory law had developed to the point that a dismissal for failure to comply with the three-year statute was now discretionary, not mandatory. (168 Cal.App.3d at pp. 414–415.) Consequently, the appellate court concluded it was improper to characterize the default judgment as void (instead it was merely "irregular") because the factors a trial court can consider in exercising its discretionary power to dismiss do not necessarily appear on a review of the judgment roll. (*Id.* at pp. 415–416.) In the course of that discussion, the court noted that precedent holds that a default judgment is "valid when based on actual service of summons on the defendant, though no proof of service is filed prior to entry of the judgment." (*Id.* at p. 416.) This language is of no support to plaintiff because its context—evaluation of the legal effect of failing to file a timely proof of service—is not before us. Instead, the issue here is plaintiff's failure to comply with an explicit statutory prerequisite to obtaining a default or default judgment.

## DISPOSITION

The August 19, 2008 order denying appellant's motion to vacate is reversed and the trial court is directed to vacate the March 29, 2007 default and the February 25, 2008 default judgment and to permit appellant to file its answer. The parties are to bear their own costs on appeal.

Epstein, P. J., and Manella, J., concurred.

Respondent's petition for review by the Supreme Court was denied November 19, 2009, S174468.